# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

**MICHAEL S. JEFFRIES, MATTHEW C. SMITH, JAMES T. JACOBSON**

*Defendants.*

CASE NO. 24-CR-00423-NJC

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S REQUESTED JURY INSTRUCTIONS AND VERDICT SHEET

**GRAYROBINSON, P.A.**
Attorneys for Michael S. Jeffries
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida, 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

By: s/Brian H. Bieber
BRIAN H. BIEBER
New York Bar #4747507

By: s/Alek Ubieta
ALEK UBIETA
Florida Bar #1039456
*Admitted Pro Hac Vice*

By: s/David Gonzalez
DAVID GONZALEZ
Florida Bar #1078908
*Admitted Pro Hac Vice*

**ROSS AMSEL RABEN NASCIMENTO, PLLC**
Attorneys for Matthew C. Smith
1395 Brickell Avenue, Suite 800
Miami, Florida 33131
Telephone: (305) 858-9550

By: s/David Raben
DAVID RABEN
Florida Bar #308641
*Admitted Pro Hac Vice*

By: s/Joseph Nascimento
JOSEPH NASCIMENTO
Florida Bar #70096
*Admitted Pro Hac Vice*

**ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP**
Attorneys for James T. Jacobson
100 Lafayette Street, 5th Floor
New York, New York 10013
Telephone: (212) 571-5500
Facsimile: (212) 571-5507

By: s/Jeremy Schneider
JEREMY SCHNEIDER
New York Bar #2009751

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 6

APPLICABLE STANDARD ........ 7

I. THE COURT SHOULD INSTRUCT THAT RELATIONSHIPS AND MERE ASSOCIATION ARE NOT EVIDENCE OF GUILT (DEFENSE REQUEST NO. 2) ........ 7

II. THE AIDING-AND-ABETTING INSTRUCTION MUST REQUIRE THAT EACH DEFENDANT'S INTENT EXTEND TO EVERY ELEMENT OF THE CHARGED OFFENSE (REQUEST NO. 4) ........ 9

A. Rosemond Requires Intent as to The Entire Crime ........ 9

B. The Defense Agrees the Instruction Should Apply to All Counts and Proposes General Language ........ 10

C. The Instruction Should State the Consequence of a Reasonable Doubt ........ 11

III. COUNT ONE (REQUEST NO. 5) ........ 12

A. Venture Participation Requires Knowing Participation in the Venture's Trafficking Activity ........ 12

B. The Fraud Definition Should Distinguish Deception From Nondisclosure and Sales Talk ........ 13

C. The Serious-Harm Instruction Must Convey the Objective Standard and Exclude Ordinary Economic Pressure ........ 15

D. Unanimity as to a Specific Individual and a Special Verdict Form ........ 17

E. The Jury Should Be Instructed That Commercial Sex Between Adults Is Not Sex Trafficking (Defense Request No. 6) ........ 20

F. If Evidence of Prior Commercial Sex Work Is Admitted, a Limiting Instruction Is Required (Defense Request No. 22) ........ 21

IV. INSTRUCTIONS ON WITNESS CREDIBILITY ........ 21

A. Witnesses With a Financial Interest and Government Benefits (Request No. 8) . 21

B. References to "Victims" (Defense Request No. 11) ........ 22

C. Investigative Techniques (Request No. 12) ........ 23

V. THE COURT SHOULD INSTRUCT ON VENUE (DEFENSE REQUEST NO. 21) ........ 23

VI. REMAINING LANGUAGE DISPUTES ........ 24

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Cases**

Headley v. Church of Scientology Int'l, 687 F.3d 1173 (9th Cir. 2012) ..... 16
Richardson v. United States, 526 U.S. 813 (1999) ..... 19
Rosemond v. United States, 572 U.S. 65 (2014) ..... 9
United States v. Afyare, 632 F. App'x 272 (6th Cir. 2016) ..... 12, 20
United States v. Autuori, 212 F.3d 105 (2d Cir. 2000) ..... 13
United States v. Bradford, 148 F.4th 699 (9th Cir. 2025) ..... 19
United States v. Bradley, 390 F.3d 145 (1st Cir. 2004) ..... 16
United States v. Calimlim, 538 F.3d 706 (7th Cir. 2008) ..... 16
United States v. Corley, 679 F. App'x 1 (2d Cir. 2017) ..... 18, 19
United States v. Cruz, 363 F.3d 187 (2d Cir. 2004) ..... 8
United States v. Cummings, 858 F.3d 763 (2d Cir. 2017) ..... 21
United States v. Dove, 916 F.2d 41 (2d Cir. 1990) ..... 7, 11, 20
United States v. Frank, 494 F.2d 145 (2d Cir. 1974) ..... 22
United States v. Frey, 736 F. Supp. 3d 128 (E.D.N.Y. 2024) ..... 13
United States v. Johnson, 513 F.2d 819 (2d Cir. 1975) ..... 8
United States v. Kandic, 134 F.4th 92 (2d Cir. 2025) ..... 17, 18
United States v. Margiotta, 646 F.2d 729 (2d Cir. 1981) ..... 19
United States v. McIntosh, 753 F.3d 388 (2d Cir. 2014) ..... 18
United States v. Mickey, 897 F.3d 1173 (9th Cir. 2018) ..... 18, 19
United States v. Ogando, 968 F.2d 146 (2d Cir. 1992) ..... 19
United States v. Prawl, 168 F.3d 622 (2d Cir. 1999) ..... 21
United States v. Purcell, 967 F.3d 159 (2d Cir. 2020) ..... 15, 18, 24
United States v. Raniere, 55 F.4th 354 (2d Cir. 2022) ..... 9
United States v. Rivera, 799 F.3d 180 (2d Cir. 2015) ..... 15, 21
United States v. Rodriguez-Moreno, 526 U.S. 275 (1999) ..... 24
United States v. Saldarriaga, 204 F.3d 50 (2d Cir. 2000) (per curiam) ..... 23
United States v. Shine, No. 20-314, 2022 WL 761520 (2d Cir. Mar. 14, 2022) ..... 12
United States v. Stanchich, 550 F.2d 1294 (2d Cir. 1977) ..... 8
United States v. Sturdivant, 244 F.3d 71 (2d Cir. 2001) ..... 17

United States v. Sutton, 13 F.3d 595 (2d Cir. 1994) ........ 23

United States v. Thompson, 896 F.3d 155 (2d Cir. 2018) ........ 23

United States v. Toviave, 761 F.3d 623 (6th Cir. 2014) ........ 16

United States v. Tzolov, 642 F.3d 314 (2d Cir. 2011) ........ 24

United States v. Vasquez, 82 F.3d 574 (2d Cir. 1996) ........ 7

United States v. Vaughn, 430 F.3d 518 (2d Cir. 2005) ........ 21

**Statutes**

18 U.S.C. § 111 ........ 18

18 U.S.C. § 1589 ........ 16

18 U.S.C. § 1591 ........ passim

18 U.S.C. § 2 ........ 9

18 U.S.C. § 2422 ........ 6, 20, 23, 24

**Rules**

Fed. R. Evid. 105 ........ 21

Fed. R. Evid. 412 ........ 20

**Other Authorities**

Jury Charge, United States v. Combs, No. 24-cr-542 (AS) (S.D.N.Y. June 30, 2025), ....... passim

Jury Charge, United States v. Maxwell, No. 20-cr-330 (AJN) (S.D.N.Y. Dec. 19, 2021).... passim

Jury Charge, United States v. Priolo, No. 21-cr-00566 (NJC) (E.D.N.Y. March 18, 2025) ... 7, 13, 14, 22

**PRELIMINARY STATEMENT**

Defendants Michael S. Jeffries, Matthew C. Smith, and James T. Jacobson respectfully submit this memorandum of law in support of the defense's proposed modifications to the parties' joint Requests to Charge, as reflected in the November 13, 2026 exchange draft, and in response to the Government's objections. ECF No. 135. The parties have resolved a number of issues and this memorandum addresses those that remain which require additional briefing.

There is a recurring concern that the defendants attempt to address with their proposed jury instructions. Count One charges sex trafficking of adults under 18 U.S.C. § 1591(a), specifically referencing commercial sex. Consensual commercial sex between adults does not violate § 1591 unless force, threats of force, fraud, or coercion was used to cause it, and unless the defendant knew or recklessly disregarded that fact. Counts Two through Sixteen, by contrast, charge violations of 18 U.S.C. § 2422(a), for which the parties have agreed that if the government proves that the defendant knowingly persuaded, induced, enticed, or coerced an alleged victim to travel in interstate or foreign commerce to engage in prostitution, then the defendant is guilty of that count whether or not the alleged victim agreed or consented to the travel or consented to engage in prostitution. Trying these counts together, over a charged period of more than six years and involving potentially more than fifteen individuals (at this stage the Defense is still unaware of how many and whom the government alleges are victims of Count 1), creates a risk that the jury will treat proof of paid sex and paid travel as absolute proof of trafficking without more – which is clearly contrary to the law. The Defense attempts to mitigate that risk by tying accomplice and venture liability to the force-fraud-coercion element; by defining fraud and serious harm so that deception and coercion are distinguished from ordinary bargaining; by securing unanimity as to a specific individual and means; and by giving the jury the specific tools the law provides for evaluating interested witnesses.

## APPLICABLE STANDARD

A criminal defendant "is entitled to instructions relating to his theory of defense, for which there is some foundation in the proof, no matter how tenuous that defense may appear to the trial court." *United States v. Dove*, 916 F.2d 41, 46 (2d Cir. 1990). Refusal of a requested charge is reversible error where the instruction "is legally correct, represents a theory of defense with basis in the record that would lead to acquittal, and the theory is not effectively presented elsewhere in the charge." *United States v. Vasquez*, 82 F.3d 574, 577 (2d Cir. 1996).

Many of the Government's objections are that a request is "argumentative," "repetitive," or "unnecessary." None of those labels answers the governing question, which is whether the substance of a legally correct request is "effectively presented elsewhere in the charge." *Vasquez*, 82 F.3d at 577. As shown below, for each disputed request it is not.

## I. THE COURT SHOULD INSTRUCT THAT RELATIONSHIPS AND MERE ASSOCIATION ARE NOT EVIDENCE OF GUILT (DEFENSE REQUEST NO. 2)

The evidence will show that the Defendants had close personal and professional relationships with one another, including a long-term romantic relationship between Mr. Jeffries and Mr. Smith. Those relationships are the backdrop to nearly every event the Government will describe. The defense requests an instruction, adapted from this Court's charge in *Priolo*[1], that such relationships, presence, and innocent association are not, on their own, evidence of guilt. Priolo Charge at 50-51.

The instruction is a correct statement of Second Circuit law in the aiding-and-abetting context, not merely in conspiracy cases. Mere presence at the scene or association with conspirators is insufficient to prove aiding and abetting, even where the defendant knows of the

[1] Jury Charge, United States v. Philip Priolo, No. 21-cr-00566 (NJC) (E.D.N.Y. March 18, 2025).

crime. *United States v. Cruz,* 363 F.3d 187, 198 (2d Cir. 2004) (citing *United States v. Johnson*, 513 F.2d 819, 823-24 (2d Cir. 1975). This Circuit has long approved charge language to the same effect. *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977) ("The mere presence of a defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or the mere negative acquiescence by a defendant in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding and abetting. . . ").

Courts in recent sex-offense trials have charged the association principle outside the conspiracy context. In *Maxwell*, the court instructed on the substantive counts that the jury "may not infer that Ms. Maxwell is guilty of participating in criminal conduct merely from the fact that she associated with other people who were guilty of wrongdoing." Jury Charge, *United States v. Maxwell*, No. 20-cr-330 (AJN) (S.D.N.Y. Dec. 19, 2021) ("Maxwell Charge"), Instr. No. 43, at 60-61.[2] In *Combs*, the court instructed that "[a] person may know, or be friendly with, a criminal, without being a criminal himself." Jury Charge, *United States v. Combs*, No. 24-cr-542 (AS) (S.D.N.Y. June 30, 2025), ECF No. 424 ("Combs Charge"), at 17.[3]

The substance is not effectively presented elsewhere. The Government's aiding-and-abetting instruction contains a general mere-presence sentence, but it says nothing about personal, romantic, or employment relationships, which are the principal form of association the jury will hear about. More significantly, the venture theory under § 1591(a)(2) defines a "venture" as any "two or more individuals associated in fact." An instruction that defines the crime by reference to association, delivered to a jury that will hear extensive evidence of intimate and employment

[2] Page cites to the *Maxwell* Charge are to the pagination of the filed PDF, which begins with the court's transmittal order.
[3] Page cites to the *Combs* Charge are to the ECF stamped pagination at the top of each filed page.

relationships among the Defendants, invites precisely the inference the law forbids unless the jury is also told that a relationship is not itself evidence of guilt.

## II. THE AIDING-AND-ABETTING INSTRUCTION MUST REQUIRE THAT EACH DEFENDANT'S INTENT EXTEND TO EVERY ELEMENT OF THE CHARGED OFFENSE (REQUEST NO. 4)

### A. Rosemond Requires Intent as to The Entire Crime

Under 18 U.S.C. § 2, a defendant is liable as an aider and abettor only if he took an affirmative act in furtherance of the offense with the intent of facilitating the offense's commission. *Rosemond v. United States*, 572 U.S. 65, 71 (2014). Critically, "[a]n intent to advance some different or lesser offense is not, or at least not usually, sufficient: Instead, the intent must go to the specific and entire crime charged . . ." *Rosemond*, 572 U.S. at 76. In *Rosemond*, the Supreme Court held deficient an instruction permitting conviction if the defendant knew his cohort used a firearm and knowingly participated in the underlying drug crime, because it did not consider when the defendant learned of the firearm nor did it require intent reaching the distinct element that made the offense more serious.

Section 1591(a) contains an analogous distinct element. For adult individuals, the Government must prove that the defendant knew, or recklessly disregarded, that "means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a); *see United States v. Raniere*, 55 F.4th 354 (2d Cir. 2022). Transposed to this case, *Rosemond* requires that an aider and abettor's intent reach beyond facilitating commercial sex to commercial sex that the defendant knew, or recklessly disregarded, would be caused by force, fraud, or coercion. The Government's draft, which asks only whether the defendant "knew that the crime was being committed," does not convey that requirement. A juror could readily conclude that a defendant who knew that

commercial sex was occurring "knew that the crime was being committed," without ever considering whether that defendant knew anything about force, fraud, or coercion. That is the error *Rosemond* corrected.

**B. The Defense Agrees the Instruction Should Apply to All Counts and Proposes General Language**

The Government's principal objection is that the defense additions refer only to Count One, while the aiding-and-abetting instruction applies to all sixteen counts. The defense agrees that the instruction should be written for all counts. That objection, however, is a reason to revise the language, not to omit the *Rosemond* requirement from the one count where it matters most. The defense proposes the following in place of its prior additions:

> To establish that a particular defendant knowingly associated himself with the crime you are considering, the government must prove that the defendant's state of mind extended to every element of that crime. For Count One, this means that the government must prove that the defendant knew, or acted in reckless disregard of the fact, that means of force, threats of force, fraud, or coercion would be used to cause the individual you are considering to engage in a commercial sex act. It is not enough that the defendant knew that the individual was engaged in commercial sex, or that he assisted with commercial sex activity. For Counts Two through Sixteen, this means that the government must prove that the defendant intended that the individual named in the count would travel in interstate or foreign commerce to engage in prostitution.

The same principle should be reflected, in count-neutral terms, in the participation sentence ("for the specific purpose of bringing about that crime, meaning the crime as a whole, including each of its elements"), in the mere-presence paragraph ("[a]n aider and abettor must have the knowledge I have described as to each element of the crime"), and in the "willfully caused" questions under § 2(b) ("Did the defendant act with the state of mind required for each element of the crime charged?"). The last formulation is similar to the first "willfully caused" question given

in *Combs*, a § 1591 trial: "First, did the person have the mental state required for the offense?" Combs Charge at 13. The defense acknowledges that the *Maxwell* aiding-and-abetting charge retained the phrase "[a]n aider and abettor must know that the crime is being committed." Maxwell Charge, Instr. No. 30, at 39. But the § 1591 count in *Maxwell* charged trafficking of a minor, which has no force-fraud-coercion element; the *Rosemond* problem identified in the instant case did not arise.

**C. The Instruction Should State the Consequence of a Reasonable Doubt**

The Government objects to language telling the jury that if it has a reasonable doubt as to any of the three aiding-and-abetting questions, or the two "willfully caused" questions, it must find the defendant not guilty under that theory. Both courts in *Combs* and *Maxwell* told the jury the consequence of a negative answer to the three questions. Combs Charge at 12 ("If the answer to any one of these questions is 'no,' then the person is not an aider and abettor, and is not guilty as an aider and abettor."); Maxwell Charge, Instr. No. 30, at 40 ("[Y]ou must find her not guilty under that theory."). The Government's own draft already tells the jury that if it is "unanimously persuaded beyond a reasonable doubt that the answer to both of these questions is yes," the defendant is guilty. The defense language does nothing more than state the converse. An instruction that tells the jury when to convict, but is silent on when to acquit, is unbalanced, and the Second Circuit has reversed where a charge failed to give balanced treatment to the defense. *United States v. Dove*, 916 F.2d 41, 46-7 (2d Cir. 1990). The Government's further suggestion that the viability of the aiding-and-abetting theory is for summation misses the point: the defense language states no fact and makes no argument; it states the legal consequence of a reasonable doubt.

## III. COUNT ONE (REQUEST NO. 5)

### A. Venture Participation Requires Knowing Participation in the Venture's Trafficking Activity

The defense does not contend that a venture participant must personally recruit, entice, harbor, transport, provide, obtain, or maintain anyone; the government is correct that the venture theory reaches a participant where another member of the venture performs the trafficking act. The defense's concern is different. As drafted, the instruction permits the jury to find participation "if the defendant in any way took part in that venture," and states that "[i]t is sufficient if the defendant played any role in the venture, even if that role was minor." Combined with the statutory definition of a venture as any two people "associated in fact," that language would permit conviction of a person who participated in the association, such as by working for, living with, or traveling with another person, without any knowing connection to the trafficking itself – that is simply not the law.

In *United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016), the Sixth Circuit held that § 1591(a)(2) requires that the defendant "actually participate and commit some 'overt act' that furthers the sex trafficking aspect of the venture," *id.* at 286, and that "[t]he defendant's mere membership in the venture is insufficient if he is ignorant of the venture's sex trafficking activities (and the means and methods thereof)," *id.* at 285. *Afyare* is unpublished and out-of-circuit, but the Government does not dispute its central holding. In its comments, the Government states that it "does not dispute that liability under the venture theory requires knowledge of the trafficking activity." If that is common ground, the jury should be told so. The Second Circuit's non-precedential decision in *United States v. Shine*, No. 20-314, 2022 WL 761520 (2d Cir. Mar. 14, 2022), is not to the contrary; the evidence there was that the defendant worked closely with a co-

defendant to advertise the victims and retained the profits, conduct that directly furthered the trafficking. *Id.* at 2.

**B. The Fraud Definition Should Distinguish Deception From Nondisclosure and Sales Talk**

Section 1591 does not define "fraud." Courts give it its ordinary meaning: "a knowing misrepresentation of a material fact made to induce another to act to his or her detriment." *United States v. Frey*, 736 F. Supp. 3d 128, [pin] (E.D.N.Y. 2024). The parties seem to agree on the core definition, but there is disagreement concerning three additional paragraphs.

***1. Definitions of false statement, omission, and puffery***

The Government's definition requires that the defendant "knowingly made a misstatement or omission of a material fact." Under the general definition of "knowingly" in Request No. 3 (an act done "voluntarily and intentionally and not because of ignorance, accident, mistake"), a juror could read that phrase to require only that the defendant voluntarily made a statement that later proved untrue. The defense's first sentence ("[a] statement is false if it is untrue when made and was known at the time to be untrue by the person making it") eliminates that ambiguity. It is drawn from this Court's mail fraud charge in *Priolo*. Priolo Charge at 35.

The omission and puffery sentences are likewise drawn from the *Priolo* charge, *id.* at 35, 37, and reflect settled Second Circuit fraud law: "an omission can violate the fraud statute only in the context of a duty to disclose," which may arise from "partial or ambiguous statements that require further disclosure in order to avoind being misleading," and statements of puffery or sales talk are not material misrepresentations unless they contradict the speaker's honest view. *United States v. Autuori*, 212 F.3d 105, 119 (2d Cir. 2000). Because "only material misrepresentations could be used to cause a person to engage in" a commercial sex act, these definitions do not add an element; they explain the materiality concept the Government's own definition already includes.

They are necessary here because the Government's fraud theory, as the defense understands it, rests substantially on what individuals were or were not told in advance about the events and on statements about possible career opportunities. Without these definitions, the jury could treat any failure to describe an event in advance, or any optimistic statement about the future, as fraud.

***2. Good faith***

The defense acknowledges that where a charge correctly requires knowledge and intent, a separate good-faith instruction is generally not required, but it also not prohibited. This Court gave a good-faith instruction on the fraud counts in *Priolo*. Priolo Charge at 39. A good-faith instruction is warranted here because the Government's fraud definition does not clearly require knowledge of falsity. If the Court adopts the defense's definition of a false statement, the need for a separate good-faith paragraph is reduced; if it does not, the good-faith paragraph is the only place the charge would tell the jury that an honest but mistaken representation is not fraud.

***3. Fraud as to the specific individual***

Fraud under § 1591 must be directed at causing the commercial sex act of the person in question. That principle follows from the statutory text (means used "to cause the person to engage in a commercial sex act") and from the Government's concession that the jury must agree unanimously on a specific individual. Admittedly, § 1591 does not require proof that a misrepresentation in fact caused the act, so to avoid any suggestion of an actual-causation requirement, the defense proposes the following revision:

> Fraud as to one person cannot be used to establish fraud as to another. You must consider whether the government has proven that a material misstatement or omission was made to cause the specific individual you are considering to engage in a commercial sex act.

### C. The Serious-Harm Instruction Must Convey the Objective Standard and Exclude Ordinary Economic Pressure

#### *1. The objective-reasonableness sentence is required, not redundant*

The Government consents to the defense's hybrid-standard language but objects to the sentence beginning "The question is not simply" as redundant. That sentence is the heart of the Second Circuit's holding in *United States v. Rivera*, 799 F.3d 180 (2d Cir. 2015). There, the district court instructed on the victim's background, condition, and station in life and "focused on 'the particular Jane Doe,'" without requiring that her acquiescence be objectively reasonable. The Second Circuit held that instruction erroneous, explaining that the correct standard is a hybrid: the jury may consider the particular vulnerabilities of a person in the victim's position, but the victim's acquiescence must also be objectively reasonable under the circumstances. *Id.* at 186-87. The court found the error harmless only because of the egregious evidence of coercion in that case, including threats of deportation and physical violence. *Id.*; *see also United States v. Purcell*, 967 F.3d 159, 192 (2d Cir. 2020) (reaffirming the standard). The Government's draft lists the same kind of individual factors ("station in life, physical and mental condition, age, education level, experiences and intelligence"). The sentence the Government would strike is what keeps that list from repeating the *Rivera* error.

#### *2. Ordinary economic pressure is not serious harm*

The Government objects that the defense's economic-pressure paragraph is "contrary to statute" because § 1591(e) defines serious harm to include "financial" harm. The paragraph is not contrary to the statute; it explains the statute's limiting language. Serious harm is harm "sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." 18 U.S.C. § 1591(e). The defense paragraph

addresses what it means to "compel" a person to "avoid incurring" harm where the claimed harm is the loss of a benefit offered in a voluntary exchange.

Courts construing the materially identical definition of "serious harm" in the forced labor statute, 18 U.S.C. § 1589(c)(2), have drawn this same line. The Seventh Circuit approved an instruction that "[w]arnings of legitimate but adverse consequences or credible threats of deportation, standing alone, are not sufficient to violate the forced labor statute," and explained that an employer who threatens the loss of a benefit "is not procuring labor by means of this statement" because "the employee could quit and change jobs." *United States v. Calimlim*, 538 F.3d 706, 711-13 (7th Cir. 2008). The First Circuit recognized the need "to draw a line between improper threats or coercion and permissible warnings of adverse but legitimate consequences," and confirmed that the defense may argue that individuals "remained . . . because of pay rather than threats." *United States v. Bradley*, 390 F.3d 145, 150-51, 154 (1st Cir. 2004), *vacated on other grounds*, 545 U.S. 1101 (2005); See also, *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1179-80 (9th Cir. 2012) ("not all bad employer-employee relationships" constitute forced labor); *United States v. Toviave*, 761 F.3d 623, 625-26 (6th Cir. 2014).

The instruction is necessary because the jury will hear that individuals were paid, that their travel was paid for, and that some were invited to future events. Without guidance, the jury could conclude that the prospect of not being paid, or not being invited back, is "financial" serious harm. That reading would convert every paid sexual encounter between adults into potential trafficking. The *Combs* court gave the *Calimlim* formulation in the same trial in which it charged § 1591: "Warnings of legitimate but adverse consequences of an employee's actions, standing alone, are not sufficient to violate the forced labor statute. It is for you to determine whether any conduct constituted legitimate warnings on the one hand, or threats as I just defined that term to you."

Combs Charge at 32. The defense recognizes that *Combs* gave that language in its instruction on the forced labor racketeering act, not in its § 1591 instruction. But the two statutes share the same "serious harm" definition, and nothing in § 1591 makes legitimate warnings coercive when the requested act is sexual rather than labor. If the Court prefers language closer to an approved instruction, the defense proposes the following alternative, modeled on *Calimlim* and *Combs*:

> Warnings of legitimate but adverse consequences, such as that a person will not be paid, will not be invited to future events, or will lose an opportunity that he wants, standing alone, are not sufficient to establish a threat of serious harm. A person who engages in commercial sex because he wants the money or other benefits offered, rather than because he reasonably fears serious harm if he refuses, has not been coerced.

**D. Unanimity as to a Specific Individual and a Special Verdict Form**

Count One charges the trafficking of "one or more persons" over more than eight years. The Government agrees that the jury must unanimously agree on the same specific individual. The remaining disputes are whether the jury must find every element as to that same individual, whether the verdict form should record the individual or individuals so found, and whether the jury must agree on the statutory prong and the means.

***1. Every element must be proven as to the same individual***

In *United States v. Kandic*, 134 F.4th 92 (2d Cir. 2025), the Second Circuit held that a count charging a result as to "one or more persons" is duplicitous, because "each possible [victim] could have been separated into its own count." *Id.* at 101. "[P]rejudice to the defendant can be avoided by having the government elect to proceed based upon only one of the distinct crimes included within a duplicitous count . . . or by a jury instruction that ensures that the jury is unanimous as to the conduct underlying the conviction." *United States v. Sturdivant*, 244 F.3d 71, 79 (2d Cir. 2001).

Since the Government concedes that the individual is a fact on which the jury must agree, it follows that the Government may not prove the first element as to one individual and the second as to another. The Government's authorities (*United States v. Mickey*, 897 F.3d 1173, 1181-82 (9th Cir. 2018); *United States v. McIntosh*, 753 F.3d 388, 393 (2d Cir. 2014); *United States v. Corley*, 679 F. App'x 1, 5 (2d Cir. 2017)) address whether alternative means or statutory subsections require unanimity. None addresses whether jurors may aggregate elements across different individuals in a multi-victim count. *McIntosh* involved a single-victim assault under 18 U.S.C. § 111(a). In *Combs*, where each § 1591 count named a single individual, the court nonetheless instructed that the jury "must be unanimous that the government proved beyond a reasonable doubt all the elements of the charge with respect to at least one specific instance of alleged sex trafficking within that period." Combs Charge at 47. It gave the same instruction for the transportation-for-prostitution counts. *Id.* at 49. If all-elements unanimity as to a specific instance is appropriate where the count already names the individual, it is absolutely required where, as here, the count names no one.

***2. The verdict form should identify the individual or individuals found***

*Kandic* held that the unanimity concern was removed by "the court's 'careful charge regarding unanimity' and the special verdict sheet," which required the jury to find unanimously as to the named individual and as to "any other person or persons." 134 F.4th at 101. The Second Circuit has also affirmed a § 1591 trial in which the verdict form "required a special verdict . . . with respect to each of the three victims named in Count One." *United States v. Purcell*, 967 F.3d 159, 186 (2d Cir. 2020).

Special interrogatories are generally disfavored in criminal cases, but "the usual prohibition is for the benefit of the defendant," and where a defendant "prefers identification of the one or

more actionable [acts] the jury finds to have occurred," the court may "submit a special interrogatory upon the defendant's request." *United States v. Margiotta*, 646 F.2d 729 (2d Cir. 1981) (dicta). The Second Circuit has stated a "preference for special interrogatories in particularly complex criminal cases," while leaving the matter to the Court's discretion. *United States v. Ogando*, 968 F.2d 146, 149 (2d Cir. 1992). This case is complex by any measure: three defendants, a six-year period, two statutory prongs, four alternative means, and multiple individuals in a single count. A verdict form identifying the individual or individuals also protects against the double jeopardy and sentencing ambiguities that a general verdict on a duplicitous count creates. The defense does not seek a form of right; it asks the Court to exercise its discretion to record the unanimity the Government already concedes is required.

***3. Unanimity as to statutory prong and means***

The defense acknowledges that persuasive authority treats § 1591(a)(1) and (a)(2), and force, fraud, and coercion, as alternative means rather than elements. *Corley*, 679 F. App'x at 5; *Mickey*, 897 F.3d at 1181-82; *United States v. Bradford*, 148 F.4th 699 (9th Cir. 2025). No precedential Second Circuit decision so holds; *Corley* is a summary order. The defense maintains these requests to preserve the issue, and notes that *Richardson v. United States,* 526 U.S. 813 (1999), recognizes constitutional limits on states defining crimes that permit juries "to convict while disagreeing about means" where doing so "risks serious unfairness." 526 U.S. at 820. That risk exists here where the means are factually distinct theories (for example, deception about the nature of an event as against threats or physical coercion) that would rest on different witnesses and different evidence.

**E. The Jury Should Be Instructed That Commercial Sex Between Adults Is Not Sex Trafficking (Defense Request No. 6)**

Defense Request No. 6 is one of the defense's theory-of-the-case instructions, and the defense is entitled to it. *Dove*, 916 F.2d at 46. It is legally correct: § 1591(a) "criminalizes the sex trafficking of adults (18 or older), but only if done by force, fraud, or coercion." *Afyare*, 632 F. App'x at 278-79. It will have a foundation in the record, it is not redundant and it would lead to acquittal.

The elements charge tells the jury what the Government must prove, but does not tell the jury that paying an adult for consensual commercial sex, or an adult's choice to engage in sex for money, falls outside the sex trafficking statute. That omission matters because the jury will be instructed, in the agreed § 2422(a) charge, that if the government proves that the defendant knowingly persuaded, induced, enticed, or coerced an alleged victim to travel in interstate or foreign commerce to engage in prostitution, then the defendant is guilty of that count whether or not the alleged victim agreed or consented to the travel or consented to engage in prostitution. The agreed sentence limiting that instruction to Counts Two through Sixteen helps, but it appears only within the § 2422(a) charge. The Government's own requests include case-specific instructions that favor its theory, such as that consent is no defense on Counts Two through Sixteen and that a cellphone used in furtherance of trafficking satisfies the interstate commerce element. Balance requires the corresponding instruction on Count One.

To address the Government's objection that the request is argumentative, the defense will withdraw the third paragraph (the list of considerations bearing on voluntariness) if the Court views it as marshaling evidence, and requests that the remaining three paragraphs be given.

**F. If Evidence of Prior Commercial Sex Work Is Admitted, a Limiting Instruction Is Required (Defense Request No. 22)**

Defense Request No. 22 is conditional. It applies only if the Court admits evidence of a complaining witness's escorting, commercial sex work, or adult film work, which the Defense asserts is constitutionally required, or because the Government itself elicits it. If such evidence is admitted for a limited purpose, the Court, "on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105. In this Circuit, the burden is on the defendant to request the instruction, and an objection is waived if he does not. *See United States v. Cummings*, 858 F.3d 763, 776 (2d Cir. 2017). The defense is making that request.

The Government's objection that the request is "contrary to" Rule 412 misreads both the rule and the request. The instruction does not ask the jury to infer consent or propensity from prior sexual conduct; it forbids that use. In *Rivera*, the Second Circuit held that prior commercial sex was "irrelevant to whether those victims were *coerced*." 799 F.3d at 185 (emphasis in original). *Rivera* did not hold such evidence irrelevant to fraud, which turns on what the individual was told and what he knew. The Defense recognizes that this instruction is dependent on the Court's ruling on the pending motions in limine.

## IV. INSTRUCTIONS ON WITNESS CREDIBILITY

**A. Witnesses With a Financial Interest and Government Benefits (Request No. 8)**

A defendant who requests it "is entitled to a charge that identifies the circumstances that may make one or another of the government's witnesses particularly vulnerable to the prosecution's power and influence, and that specifies the ways (by catalog or example) that a person so situated might be particularly advantaged by promoting the prosecution's case." *United States v. Prawl*, 168 F.3d 622, 628 (2d Cir. 1999). The defense recognizes that *United States v. Vaughn*, 430 F.3d 518 (2d Cir. 2005), limited *Prawl*, holding that a general interested-witness charge combined with

cross-examination and summation may fairly put the issue to the jury. But *Vaughn* also observed that a more detailed charge would have been prudent. *Id.* at 524. The question here is not what would survive appellate review, but what charge best equips this jury.

A complaining witness's pending or contemplated civil suit is a classic source of bias. The Second Circuit has explained that the court may tell the jury "that a conviction could operate to the advantage of the plaintiff in the civil suit." *United States v. Frank*, 494 F.2d 145, 160 (2d Cir. 1974). The final sentence of the defense request (that evidence of bias requires the jury to "view the witness's testimony with caution, weigh it with care, and subject it to close and searching scrutiny") is drawn from *Combs*, which also told the jury to "take into account any evidence of any benefit that a witness may receive from the outcome of the case." *Combs* Charge at 7. Combs separately instructed that an immunized witness's testimony "should be examined by you with greater care than the testimony of an ordinary witness." Id. at 52; see also Maxwell Charge, Instr. No. 44, at 62-63 (jury "should take into account any evidence that the witness who testified may benefit in some way from the outcome of this case" and "accept it with great care"). The general *Priolo* credibility instruction refers only to a witness's interest in the outcome of "this case"; it does not tell the jury that a civil suit arising from the same events is such an interest.

**B. References to "Victims" (Defense Request No. 11)**

Whether any individual was a victim of a crime is the central disputed question in this case. The *Combs* court, charging § 1591, used "alleged victim" throughout its elements instructions, *Combs* Charge at 42-46, and the *Maxwell* court referred to the individuals by name or pseudonym. *Maxwell* Charge, Instr. Nos. 14-29, at 21-37. The Government's concern that the instruction will appear to admonish the prosecution is unfounded. The instruction is neutral: it refers equally to "complaining witnesses" and "victims," says nothing about counsel, and tells the jury only what is

already true, that labels are not evidence. The concern is heightened because the Court's own charge, as presently drafted, uses "victim" in defining serious harm, fraud, and reckless disregard.

**C. Investigative Techniques (Request No. 12)**

The defense's addition preserves the Government's language that there is no legal requirement to use any particular investigative technique, and adds that the jury may consider the absence of evidence in deciding whether the Government has met its burden. The Second Circuit approved as "legally sound" a charge stating that if the absence of evidence on a subject leads the jury to a reasonable doubt, "then, of course, that is a reasonable doubt like anything else." *United States v. Saldarriaga*, 204 F.3d 50, 52-53 (2d Cir. 2000) (per curiam). The *Combs* court gave a similar instruction. *Combs* Charge at 53 ("However, you may consider these facts in deciding whether the government has met its burden of proof, because as I told you, you should look to all of the evidence or lack of evidence in deciding whether the defendant is guilty."); see also *Maxwell* Charge, Instr. No. 51, at 71 ("Your concern is to determine whether or not, on the evidence or lack of evidence, the defendant's guilt has been proved beyond a reasonable doubt."). Without the addition, the instruction tells the jury only what it may not do with gaps in the investigation.

## V. THE COURT SHOULD INSTRUCT ON VENUE (DEFENSE REQUEST NO. 21)

Venue must be submitted to the jury when it is "squarely interposed" by the defense, and failure to instruct is reversible error where trial testimony puts venue in issue and the defendant requests the instruction. *United States v. Sutton*, 13 F.3d 595, 598 (2d Cir. 1994). The Government must establish venue for each count by a preponderance of the evidence. *United States v. Thompson*, 896 F.3d 155 (2d Cir. 2018).

Venue lies only where the essential conduct elements of the offense occurred. *United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999). For § 2422(a), "both the defendant's act of enticement and the victim's interstate travel . . . constitute conduct that is essential to the offense." *Purcell*, 967 F.3d at 186. In *Purcell*, the Second Circuit held venue lacking on a § 2422(a) count where the Government's theory that the defendant placed a call from within the district was "speculation rather than evidence," and his passage through the district was a preparatory act. *Id.* at 187-90 (citing *United States v. Tzolov*, 642 F.3d 314, 319 (2d Cir. 2011)). The *Combs* court gave a venue instruction in substantially the form the defense requests, including that the act must constitute "an essential conduct element of the charged offense," that "[a]cts that are preparatory to the offense, and not part of the offense, are insufficient," and that the jury "must acquit" on any count for which venue is not proven. Combs Charge at 50-51; *see also* Maxwell Charge, Instr. No. 40, at 57 ("Venue must be examined separately for each count in the Indictment."). The defense's proposed instruction tracks these authorities: it identifies the essential conduct of Counts Two through Sixteen as the persuasion, inducement, enticement, or coercion of the named individual, or that individual's travel; it excludes preparatory acts; and it requires count-by-count proof.

## VI. REMAINING LANGUAGE DISPUTES

The Government objects as repetitive to the phrase "that the government must prove beyond a reasonable doubt" in the descriptions of the first and third elements of the § 2422(a) offense. The Government's own Count One instruction uses the same phrase in introducing the fourth element ("the fourth element that the government must prove beyond a reasonable doubt"). Consistency within the charge favors including it. The Government objects as repetitive to the defense's paragraph applying the unanimity requirement separately to each defendant. If the Court gives Defense Request No. 2 in full, the defense agrees that a short cross-reference will suffice.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court adopt the defense's proposed instructions.

Dated: November 17, 2026

Respectfully Submitted,

ROSS AMSEL RABEN
NASCIMENTO, PLLC
1395 Brickell Avenue, Suite 800
Miami, Florida 33131
Telephone: (305) 858-9550
Joe@crimlawfirm.com

BY: *<u>/s Joseph E. Nascimento</u>*
JOSEPH E. NASCIMENTO
Florida Bar No. 70096
*Pro Hac Vice*
Counsel for Smith